UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**180 INDUSTRIAL, LLC,** *et al.*,

         **Plaintiffs,**   :

  v.                     **Case No. 2:17-cv-937**
                            **Judge Sarah D. Morrison**
                            **Magistrate Judge Chelsey M.**
**THE BRUNNER FIRM CO., L.P.A.,**      :   **Vascura**

         **Defendant.**

## OPINION AND ORDER

This matter is before the Court for consideration of the Motion to Dismiss filed by Defendant The Brunner Firm Co., L.P.A., d/b/a/ Brunner Quinn. (Mot. to Dismiss, ECF No. 38.) Plaintiffs 180 Industrial, LLC ("180") and Bryan L. Norton have filed a Response (Resp., ECF No. 39), to which Brunner Quinn replied (Reply, ECF No. 40). Accordingly, this matter is now ripe for consideration. For the reasons set forth below, Brunner Quinn's Motion is **GRANTED**.

**I.    BACKGROUND**

    **A.    State Court Litigation**

Brunner Quinn is a Columbus-based law firm. (Compl., ¶ 3, ECF No. 1.) In May 2015, Brunner Quinn filed a complaint in the Franklin County Court of Common Pleas (the "State Court Complaint," which commenced the "State Court Litigation") on behalf of two clients, Calypso Asset Management, LLC ("CAM"), and

1

Alterra Real Estate Advisors, LLC ("Alterra"). (*Id.*, ¶ 34–35.) The State Court Complaint asserted claims against 180 and Calypso Distribution Services, Ltd. ("Calypso Logistics") arising out of a failed commercial real estate transaction. (Compl. Exh. D, ECF No. 1-4.)

The transaction, evidenced by a Purchase Agreement, was intended to result in the purchase of Calypso Logistics by CAM, and the purchase of Calypso Logistics' property on Innis Road (the "Innis Road Property") by 180. Pursuant to the Purchase Agreement, 180 deposited $170,000 in escrow. (Compl., ¶ 13.) Had the deal closed, 180 would have paid $8,500,000 for the Innis Road Property, and Alterra—who acted as CAM's broker—would have received a $340,000 commission for bringing 180 to the table. (*Id.* ¶ 182.) In the course of their due diligence, however, 180 determined that it could not proceed with the deal on the terms initially discussed. (*Id.*, ¶ 16.) 180's proposed revisions were unacceptable to CAM and the deal died. (*Id.*, ¶¶ 17–19.) But, before CAM would release 180's deposit from escrow, CAM required 180 to enter into a settlement agreement. (*Id.*, ¶ 21.) The settlement agreement was signed by CAM and 180 in late-December, 2014. (Compl. Exh. B, ECF No. 1-2.)

On March 16, 2015, Triple Net Acquisitions, LLC ("Triple Net") entered into an agreement (the "Triple Net Agreement") to purchase the Innis Road Property. (Compl., ¶ 30. *See also* Compl. Exh. C, ECF No. 1-3.) Pursuant to the Triple Net Agreement, Triple Net deposited $70,000 in escrow. (*Id.*, ¶ 31–32.) Mr. Norton serves as the Chief Operating Officer of both 180 and Triple Net. (*Id.*, ¶ 33.)

Although 180 and Triple Net seem to have at least some common ownership, "Triple Net is not a subsidiary of 180." (*Id.*; *see also* Resp., 11 ("180's principals are the same as Triple Net's.").)

Upon learning of the Triple Net Agreement, CAM and Alterra (by and through their counsel, Brunner Quinn) filed the State Court Complaint seeking, *inter alia*, specific performance of the Purchase Agreement. (*See* Compl. Exh. D.) On March 29, 2016, the Judge presiding over the State Court Litigation granted summary judgment on all claims in favor of 180. (Compl. Exh. M, ECF No. 1-13.)

Thereafter, 180 filed a Motion for Attorneys' Fees and Costs based on a fee-shifting provision in the Purchase Agreement and a Motion for Sanctions for frivolous conduct, pursuant to Ohio Rev. Code § 2323.51. (Compl., ¶¶ 126, 128; Compl. Exh. N, ECF No. 1-14; Compl. Exh. O, ECF No. 1-15; Resp. Exhs. 1, 2, ECF Nos. 39-1, 39-2.) The Motion for Sanctions disclosed that Mr. Norton had been served with the State Court Complaint "on the same day that his 15-year old son tragically and unexpectedly passed away." (Compl. Exh. O, 4.)

On September 16, 2016, Rick Brunner (of Brunner Quinn) called 180's counsel regarding the Motion for Sanctions. (Compl., ¶ 133.) 180 alleges that "[d]uring their phone conversation, R. Brunner told [180's counsel] that he knew B. Norton's son had committed suicide and if 180 did not withdraw the Motion for Sanctions he would 'Blow up the Case.'" (*Id.*, ¶ 134.) Later that day, Mr. Brunner emailed 180's counsel to summarize his objections to the Motion for Sanctions, and request its withdrawal. (Compl. Exh. 9, ECF No. 1-16.) In that email, Mr. Brunner

3

stated "there is no way we could have know that Mr. Norton's son would take his own life (apparently by a gun) the same day." (*Id.*, 3.) The fact that Mr. Norton's son had committed suicide had not previously been disclosed on the record or in communications to Mr. Brunner. (*Id.*, ¶¶ 135–36.)

### B. Procedural History

Plaintiffs filed the instant action on October 24, 2017, alleging malicious prosecution, civil conspiracy, and intentional infliction of emotional distress ("IIED"). (ECF No. 1.) Plaintiffs have clarified that 180 is the claimant for purposes of the malicious prosecution claim, and Mr. Norton is the claimant for purposes of the IIED claim.[1] (Resp., 3.) On December 17, 2018, this Court stayed the case pending a ruling on the Motions for Attorney Fees and Sanctions. (ECF No. 18.) The stay was lifted on May 28, 2020, despite pending appeals of the trial court's ruling on those Motions. (ECF No. 34.)

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with sufficient specificity to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted). A complaint which falls short of the Rule 8(a) standard may be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).

To survive a motion to dismiss, a complaint must contain sufficient

---

[1] Although Plaintiffs represent in their Response that 180 is the claimant for the civil conspiracy claim, the Court notes that, in describing the alleged unlawful acts underlying the civil conspiracy claim, the Complaint references conduct pertaining to both the malicious prosecution and IIED claims. (*Compare* Resp., 3 *with* Compl, ¶¶ 198–99.)

> factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotations omitted). The complaint need not contain detailed factual allegations, but it must include more than labels, conclusions, and formulaic recitations of the elements of a cause of action. *Directv, Inc. v. Treesh*, 487 F.3d, 471, 476 (6th Cir. 2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 555).

### III. ANALYSIS

As a preliminary matter, Plaintiffs make a motion requesting that the Court take judicial notice of the December 31, 2018 decision of the Ohio Court of Appeals for the Tenth District and the January 22, 2020 decision of the Franklin County Court of Common Pleas, both pertaining to the Motions for Attorney Fees and Sanctions. (Resp., 6 n.4.) Brunner Quinn does not respond to Plaintiffs' motion. Plaintiffs' motion is **GRANTED**.

### A. 180 fails to state a claim for malicious prosecution.

180 first alleges that Brunner Quinn maliciously prosecuted the State Court Litigation. To state a malicious prosecution claim based on civil proceedings under Ohio law, a plaintiff must allege the following four elements: (i) malicious

5

institution of prior proceedings against the plaintiff by the defendant, (ii) lack of probable cause for the filing of the prior lawsuit, (iii) termination of the prior proceedings in the plaintiff's favor, and (iv) seizure of the plaintiff's person or property during the course of the prior proceedings. *Robb v. Chagrin Lagoons Yacht Club, Inc.*, 662 N.E.2d 9, 13 (Ohio 1996) (quoting *Crawford v. Euclid Nat'l Bank*, 483 N.E.2d 1168, 1171 (Ohio 1985)).

Brunner Quinn argues that 180 has failed to state a claim for malicious prosecution, because it does not allege that its person or property was seized during the State Court Litigation. (Mot. to Dismiss, 7; Reply, 2.) The Court agrees.[2] For this purpose, a plaintiff's "[p]roperty is seized when, for instance, the plaintiff is deprived of possession, use, or enjoyment of the property or when the plaintiff's property is garnished." *Clauder v. Holbrook*, No. C-990145, 2000 WL 98218 (Ohio Ct. App. Jan. 28, 2000). "The seizure of property . . . must be by judicial process." *Bd. of Educ. of Miami Trace Local Sch. Dist., Fayette Cty. v. Marting*, No. 22692, 217 N.E.2d 712, 719 (Ohio, 1966). In other words, the prejudgment seizure must approximate "a judgment against, and a concomitant injury suffered by, a defendant before he has had a chance to defend himself." *Robb*, 662 N.E.2d at 14. 180 asserts that the following circumstances constitute a seizure of its property: Triple Net was unable to access the $70,000 it had deposited in escrow pursuant to

---

[2] 180 takes issue with certain of Brunner Quinn's conduct during the State Court Litigation, including the scope of discovery, the allegedly surreptitious presence of CAM's principal during Mr. Norton's video deposition, and allegedly false statements made in pleadings and motions. (*See, e.g.*, Compl., ¶¶ 55–69, 87–115.) Because those allegations have no bearing on the seizure requirement of a malicious prosecution claim, the Court does not address them here.

6

its agreement to purchase the Innis Road Property; and Triple Net was unable to consummate its intended purchase while the Innis Road Property was the subject of the State Court Litigation. (Resp., 11–12; Compl. ¶¶ 54, 181.) 180 further argues that the specific performance demands in the State Court Complaint amounted to a seizure of the $8,500,000 that 180 would have paid to purchase the Innis Road Property along with the $340,000 commission that would have been due to Alterra. (Resp., 12.)

Ohio courts generally disfavor malicious prosecution claims based on civil proceedings. *See Filters Unlimited Corp. v. Wolf*, No. 46699, 1983 WL 2728, at *4 (Ohio Ct. App. Nov. 3, 1983) (quoting *Nader v. McBride*, No. 39641, 1980 WL 354355, at *1–2 (Ohio Ct. App. June 19, 1980)). The requirements for maintaining such a claim are, therefore, strictly applied. *Id*. The Ohio Supreme Court has debated the propriety of requiring that a plaintiff must allege a seizure of his person or property. The Court's majority explained in *Crawford v. Euclid Nat'l Bank*:

> [T]he arguments which lend substantial credence to the [seizure requirement] are that (1) "costs" are given as adequate redress; (2) courts should be free and open to all without fear of being sued in return; (3) freely permitting malicious prosecution actions would make litigation interminable; and (4) defendant should have no right to a malicious prosecution action, since plaintiff has no action if a defense is malicious and groundless.

483 N.E.2d at 1171 (citing *Perry v. Arsham*, 136 N.E.2d 141, 143 (Ohio 1956)). The *Crawford* Court concluded that the seizure requirement "is necessary, as a matter of public policy, to dissuade the multiplicity of counter-suits that could occur in the absence of a such a requirement." *Id*. The Ohio Supreme Court affirmed its

commitment to the seizure requirement in *Robb v. Chagrin Lagoons Yacht Club*. In doing so, it noted:

> The damages from being sued civilly are of a different character than from being arrested or haled into court on a criminal charge. A person's freedom is not at stake in a civil trial. [Civil Rule] 12 allows for the quick disposal of meritless claims, and [Civil Rule] 11 presents the best avenue to deal early, quickly, and effectively with bogus lawsuits. Also, [Ohio Rev. Code §] 2323.51(B)(1) allows for the award of attorney fees to victims of frivolous conduct in a civil case.
>
> . . . [R]emoving the seizure requirement from malicious civil prosecution claims would result in an explosion of claims for malicious prosecution. There are opportunities already built into the civil system to deal with a meritless lawsuit within that same lawsuit, rather than instituting another suit. Every successful summary judgment defendant should not be tempted to file a malicious prosecution claim.

662 N.E.2d at 14. On the other hand, several Justices have voiced the opinion that the seizure requirement is unnecessary and unjust, operating only to prevent legitimate grievances from being heard. *See Robb*, 662 N.E.2d at 15–16 (Douglas, Sweeney, JJ., dissenting) ("Simply put, [the seizure requirement] is unfair and wrong."); *Crawford*, 483 N.E.2d at 1172–76 (Celebrezze, C.J., Douglas, J., dissenting) ("I believe the [seizure requirement] is archaic, unduly harsh and, furthermore, not well-reasoned.") Despite these jurists' fervent objections, the seizure requirement persists—and, as this Court has previously observed, it is "an absolutely necessary element." *Young v. Cincinnati Equine*, No. 1:16-cv-1126, 2017 WL 2153918, at *4 (S.D. Ohio May 17, 2017).

8

180's allegations of seizure fall woefully short of the mark.[3] Beginning with the allegation that Triple Net's inability to access the escrow funds or close on the Innis Road Property during the pendency of the State Court Litigation: 180 acknowledges that Triple Net is a separate legal entity with its own rights to property. (*See, e.g.*, Resp., 11 ("If 180, instead of Triple Net, was a party to the Triple Net Agreement, 180's intangible property rights in the Property would have been restrained.") (footnote omitted); Compl. ¶ 184 ("Brunner Quinn knew or should have known that the filing of the Lawsuit would prevent the Triple Net Transaction from closing and result in the constructive seizure of Triple Net's property.").) 180 maintains that "Brunner Quinn should not be permitted to escape liability for maliciously prosecuting the Lawsuit against 180 because another entity's interest (Triple Net) was restrained." (Resp., 12.) However, the law is quite clear that seizure must be as to the *plaintiff's* person or property. *See, e.g., Crawford*, 483 N.E.2d at 1171 ("[I]n order to state a cause of action for malicious prosecution in Ohio, four essential elements must be alleged by the plaintiff: . . . (4) seizure of *plaintiff's* person or property during the course of the prior proceedings[.]") (emphasis added) (internal citation omitted); *Robb*, 662 N.E.2d at 14 (same); *Yaklevich v. Kemp, Schaeffer & Rowe Co.*, 626 N.E.2d 115, 117–18 (Ohio 1994) (same). *See also Foley v. Univ. of Dayton*, 81 N.E.3d 398, 402 (Ohio 2016) (citing *Trussell v. Gen. Motors Corp.*, 559 N.E.2d 732, 735 (Ohio 1990)). 180 has not

---

[3] The deficit is so patent, in view of established precedent and in light of the pending Motion for Sanctions, that the Court reads 180's malicious prosecution claim as precisely the sort of counter-suit the seizure requirement is intended to deter. As unbecoming as Brunner Quinn's alleged conduct may be, this schoolyard lesson bears repeating: Two wrongs don't make a right.

9

proffered any legal authority supporting the notion that it is entitled to pursue a malicious prosecution claim based on another entity's—even a related entity's—injury. The Court's own research has produced none. Even assuming, *arguendo*, that it could, the nature of the injury suffered by Triple Net does not constitute a seizure sufficient to maintain a malicious civil prosecution claim. *See Crawford*, 483 N.E.2d at 1170 (finding that plaintiffs failed to allege seizure when they were required to deposit funds in escrow and offered a less favorable mortgage rate); *Clauder*, 2000 WL 98219, at *2 ("Here, [plaintiff] claims no more than that the suit made sale of the property infeasible. Such an allegation falls far short of the type of seizure required in Ohio courts to maintain a cause of action for malicious prosecution."); *Young*, 2017 WL 2153918, at *4 n.5 (finding a lien on property resulting from litigation "palpably insufficient to constitute a seizure under Ohio law"); *Cincinnati Daily Tribune v. Bruck*, 56 N.E. 198, 199 (Ohio 1900) (finding no seizure when a lawsuit "prevented a sale of the property then being negotiated").

180 also alleges that the State Court Complaint's specific performance demands constitute a seizure of its property. As 180 points out, "[i]f Brunner Quinn's clients prevailed on their specific performance claim, 180 would have to set aside assets sufficient to pay the full $8,500,000.00 purchase price" for the Innis Road Property, including $340,000 in commission due to Alterra. (Resp., 12.) 180 argues that "180's personal assets sufficient to pay the amount demanded were restrained, as hurtful to 180 as if 180's personal property and assets were in fact seized." (*Id.*) 180 cites *Bruck* to support its proposition that this constitutes a

10

constructive seizure sufficient to maintain a malicious prosecution claim. But, *Bruck* is entirely inapposite. There, the Ohio Supreme Court observed that "[a] *temporary injunction* imposes a restraint upon the owner over his property as hurtful to him as if it were in fact seized, and it was held that for the malicious prosecution of such suit an action would lie." *Bruck*, 56 N.E. at 199 (emphasis added). A complaint's prayer for specific performance is a far cry from a temporary injunction granted by judicial process.

Brunner Quinn's Motion to Dismiss 180's malicious prosecution claim is **GRANTED**.

### B. Mr. Norton fails to state a claim for intentional infliction of emotional distress.

Plaintiffs next allege that Brunner Quinn intentionally inflicted emotional distress upon Mr. Norton by threatening to disclose the circumstances of his son's tragic death, in an attempt to persuade Mr. Norton and his counsel to withdraw the Motion for Sanctions. (Compl., ¶¶ 205–15.) An IIED claim requires proving

> (1) that the actor either intended to cause emotional distress or knew or should have known that the actions taken would result in serious emotional distress to the plaintiff, (2) that the actor's conduct was so extreme and outrageous as to go beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community, (3) that the actor's actions were the proximate cause of the plaintiff's psychic injury, and (4) that the mental anguish suffered by the plaintiff is serious and of a nature that no reasonable man could be expected to endure it.

*Ondo v. City of Cleveland*, 795 F.3d 597, 611–12 (6th Cir. 2015) (quoting *Burkes v. Stidham*, 668 N.E.2d 982, 989 (Ohio Ct. App. Nov. 13, 1995)). The "extreme and

11

outrageous" standard is narrowly defined and is difficult to meet. *Id*. at 612. The Ohio Supreme Court has described it as follows:

> Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"
>
> The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. There is no occasion for the law to intervene in every case where some one's feelings are hurt.

*Yeager v. Local Union 20, Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, 453 N.E.2d 666, 671 (Ohio 1983) (quoting Restatement (Second) of Torts § 46 cmt. d (Am. Law Inst. 1965)), *abrogated on other grounds by Welling v. Weinfeld*, 866 N.E.2d 1051 (Ohio 2007). *See also Brown v. Denny*, 594 N.E.2d 1008, 1012 ("[N]ot every wrongful act is outrageous. Only the most extreme wrongs, which do gross violence to the norms of a civilized society, will rise to the level of outrageous conduct.").

Brunner Quinn argues that Mr. Norton fails to state an IIED claim for two reasons: First, because the conduct alleged is not extreme and outrageous and, second, because the conduct did not cause Mr. Norton to suffer serious mental anguish of a nature that no reasonable man could be expected to endure. (Mot. to Dismiss, 14, 16.) The Court will address each in turn.

Taking Mr. Norton's factual allegations as true, the Court finds that he nonetheless fails to allege conduct that is extreme and outrageous. Mr. Norton certainly alleges conduct that is inconsiderate, unkind, insulting, and undignified; it is precisely the sort of conduct that gives members of Mr. Brunner's profession a bad name. However, neither the disclosure of the circumstances of Mr. Norton's son's death, nor the threat of such disclosure, clear the high bar for extreme and outrageous conduct established by the Ohio Supreme Court. *Cf., Chisholm v. St Marys City Sch. Dist. Board of Educ.*, 947 F.3d 342, 354 (6th Cir. 2020) (finding that football coach's foul language was "offensive and inappropriate" but not actionable); *Silvers v. Clay Twp. Police Dep't*, 117 N.E.3d 954, 967–68 (Ohio Ct. App. July 27, 2018) (finding that coworkers' repeated teasing and insults, including related to the death of plaintiff's sister, did not constitute extreme and outrageous conduct). Mr. Norton has not provided the Court with any case law producing a finding otherwise on analogous facts. Mr. Norton's invocation of *Mangelluzzi*—a case in which the facts are entirely distinguishable—is not persuasive. *See Mangelluzzi v. Morley*, 40 N.E.3d 588, 600–01 (Ohio Ct. App. Aug. 6, 2015) (permitting plaintiffs' IIED claim to proceed on allegations that defendants engaged in "an on-going harassment scheme" to deter plaintiffs from building a home on a neighboring lot, which included filing more than 100 false complaints against plaintiffs, videotaping plaintiffs in their backyard, and knowingly making false statements to others about plaintiffs).

Again taking Mr. Norton's factual allegations as true, the Court further finds that he fails to allege that Brunner Quinn's conduct caused him sufficiently serious mental anguish. "A court may decide whether a plaintiff has stated a cause of action for [IIED] by ruling whether the emotional injury alleged is 'serious' as a matter of law." *Clay v. Shriver Allison Courley Co.*, 118 N.E. 3d 1027, 1040 (Ohio Ct. App. Aug. 16, 2018) (citing *Paugh v. Hanks*, 451 N.E.2d 759, 765 (Ohio 1983)). The "intense heartache," "distraction, loss of focus and wasted time" alleged is insufficient to sustain a claim for IIED. *See Paugh*, 451 N.E.D2d at 765 ("[S]erious emotional distress describes emotional injury which is both severe and debilitating."); *Yeager*, 453 N.E.2d at 671 (adopting the definition of "serious" used in *Paugh*).

### C. Based on the previous findings, Plaintiffs fail to state a claim for civil conspiracy.

Finally, Plaintiffs assert a claim for civil conspiracy. A civil conspiracy under Ohio law requires proof of a malicious combination by at least two people, an injury, and the existence of an unlawful act that is independent from the conspiracy itself. *See Renner v. E. Mfg. Corp.*, No. 2001-P-0135, 2002 WL 31744760, at *7 (Ohio Ct. App. Dec. 6, 2002). Brunner Quinn argues that the conspiracy claim must fail because all of Plaintiffs' other claims fail—in other words, there was no independent unlawful act. Based on the Court's findings that Plaintiffs have failed to state a claim for either malicious prosecution or IIED, the civil conspiracy claim also fails.

...

## IV. CONCLUSION

For the reasons set forth above, Brunner Quinn's Motion to Dismiss is **GRANTED**. Plaintiffs' claims are **DISMISSED** with prejudice.

**IT IS SO ORDERED.**

/s/ Sarah D. Morrison
**SARAH D. MORRISON**
**UNITED STATES DISTRICT JUDGE**